# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 4, 2025

Lyle W. Cayce
Clerk

No. 24-30633

———————

United States of America,

*Plaintiff—Appellee*,

*versus*

Yvette Hills Robertson,

*Defendant—Appellant*.

———————

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:23-CR-273-1

———————

Before Southwick, Oldham, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

Yvette Hills Robertson appeals the sentence imposed after she pleaded guilty to assaulting a postal worker. She argues that because the sentencing guidelines are discretionary, the district court erred in declining to look beyond the guidelines listed in the Statutory Index for the offense of conviction or to select the guideline that fit her offense conduct. We AFFIRM.

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-30633

I

On February 3, 2023, Robertson stopped her car behind a marked United States Postal Service vehicle parked on a street in Shreveport, Louisiana. Robertson got out of her car and began punching and scratching the mail carrier, who Robertson believed was having an affair with her husband. The mail carrier sustained minor injuries: two cuts on her wrist, swelling on her left jaw, multiple bruises on her thighs, and an injured wrist.

On December 7, 2023, Robertson was charged with one count of forcibly assaulting a federal officer in violation of 18 U.S.C. § 111(a)(1). She pleaded guilty. Robertson's original presentence report ("PSR") applied the sentencing guideline for aggravated assault, U.S.S.G. § 2A2.2, which yielded a base offense level of 14 and a guideline range of 21 to 27 months. Robertson objected, arguing that the correct guideline was the assault guideline, U.S.S.G. § 2A2.3, because she was not charged with aggravated assault. The base offense level for the assault guideline was seven and the guideline range was 4 to 10 months.

At sentencing, the district court explained that it "must determine the applicable guideline pursuant to the United States Sentencing Guideline 1B[1].2, which instructs the [district court] to refer to" the Statutory Index. It noted that the "statutory index does not list [§ 2A2.3, the assault guideline,] as a guideline [it] should consider for a conviction under" § 111(a)(1). "Appendix A clearly [gave it only] two choices, [§ 2A2.2], aggravated assault; or [§ 2A2.4], obstructing or impeding officers." The district court selected the guideline for obstructing or impeding officers, § 2A2.4, as "most applicable" under the facts.

The district court ordered the probation office to revise the PSR to apply § 2A2.4, and the revised PSR calculated a base offense level of 10 and

a guideline range of 18 to 24 months. The district court sentenced Robertson to 21 months, to be followed by three years of supervised release. After noting that Robertson's sentence was in the middle of the guideline range, the district court noted that 21 months would have been at the bottom of the range if § 2A2.2 had been applied. The district court clarified that, regardless of the applicable guideline, it would have selected the same sentence because of Robertson's actions and criminal history. It did not comment on the guideline range under § 2A2.3.

Robertson timely appealed.

## II

Robertson's principal argument is that the district court erroneously "believed the Guidelines' statutory index limited its choice of Guidelines to either aggravated assault (§ 2A2.2) or obstruction (§ 2A2.4)." She claims that this belief contravenes Supreme Court precedent establishing that the Sentencing Guidelines are merely advisory. While district courts "must begin with the Statutory Index," she argues, they "retain discretion to apply a more appropriate Guideline when the referenced Guidelines demonstrably fail to address the actual offense conduct," as in this case.

Congress created the United States Sentencing Commission to address "significant sentencing disparities among similarly situated offenders." *Peugh v. United States*, 569 U.S. 530, 536 (2013) (citing *Mistretta v. United States*, 488 U.S. 361, 362 (1989)). The Commission then produced the Sentencing Guidelines: "a system under which a set of inputs specific to a given case (the particular characteristics of the offense and offender) yielded a predetermined output (a range of months within which the defendant could be sentenced)." *Id.* "[T]he selection of the applicable guidelines begins with reference to, first, the count of conviction, and then,

the Statutory Index [of the Guidelines Manual]." *United States v. Stanford*, 883 F.3d 500, 505 (5th Cir. 2018). The Statutory Index "provides the applicable offense guidelines for various criminal statutes." *Id.* The actual guidelines are listed in Chapter Two of the Sentencing Guidelines Manual. "Where, however, the Statutory Index provides more than one applicable guideline for a statute, the Guidelines instruct district courts to 'determine which of the referenced guideline sections is most appropriate for the offense conduct charged in the count of which the defendant was convicted.'" *Id.* at 505–06.

Originally, 18 U.S.C. § 3553(b) of the Sentencing Reform Act directed district courts to impose "a sentence of the kind, and within the range" specified in the Guidelines "unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." But in *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court struck § 3553(b) from the Act. It noted that, because of § 3553(b), "departures [from the sentence ranges were] not available in every case, and in fact are unavailable in most." *Booker*, 543 U.S. at 234. In striking § 3553(b), the Supreme Court emphasized that the district courts, while no longer bound to sentence within the Guidelines range, "must [still] consult the Guidelines and take them into account when sentencing." *Hughes v. United States*, 584 U.S. 675, 681 (2018) (quoting *Booker*, 543 U.S. at 264). This remedy, "'while not the system Congress enacted,' was designed to 'continue to move sentencing in Congress' preferred direction, helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary.'" *Peugh*, 569 U.S. at 264–65.

*Booker* permits district court judges to vary from the *sentence ranges* specified in the applicable guideline. 543 U.S. at 245–58. It does not permit district court judges to deviate from the *process* for determining the applicable guideline. *See id.*; *Gall v. United States*, 552 U.S. 38, 51 (2007) (district courts must correctly calculate the applicable Guidelines range for a sentence to be procedurally reasonable). That process is set forth in the Sentencing Guidelines, which instruct district courts to "[r]efer to the Statutory Index . . . to determine the Chapter Two offense guideline . . . for the offense of conviction." U.S.S.G. § 1B1.2(a). The Commission emphasized in later amendments that "the sentencing court *must* apply the offense guideline referenced in the Statutory Index for the statute of conviction unless the case falls within the limited 'stipulation' exception set forth in § 1B1.2(a)." U.S.S.G. Amendment 591 (emphasis added). Robertson points to nothing that indicates the Supreme Court has disturbed this process. *See, e.g.*, *Peugh*, 569 U.S. at 537 ("First, 'a district court should begin all sentencing proceedings by calculating the applicable Guidelines range.'" (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007))).

Robertson instead points to a statement in *United States v. Principe*, 203 F.3d 849, 851 (5th Cir. 2000), that the guidelines selection process begins "*generally* by reference to the" Statutory Index. This statement, she argues, allows district courts in this circuit to depart from the Statutory Index and to apply a more appropriate guideline when the referenced guidelines fail to address the offense conduct.

Despite this language, this court has repeatedly—and consistently—followed the process outlined in § 1B1.2(a) to determine the applicable sentencing guideline. *See, e.g.*, *Principe*, 203 F.3d at 851 (assessing the selected guideline where "the district court was faced with the dilemma of choosing between two competing offense guidelines sections, *both of which*

*were made applicable by the guidelines' statutory index* to 18 U.S.C. § 1546(a)" (emphasis added)); *United States v. Grant*, 850 F.3d 209, 219 (5th Cir. 2017) (assessing the selected guideline where "[t]he guidelines' statutory index lists three possible guidelines for violations of 18 U.S.C. § 152"). Most recently, this court acknowledged in *United States v. Stanford* that "[t]he steps for determining the applicable guideline is not for this court to decide" because it "is clearly set forth in the Guidelines." 883 F.3d at 305. It explained that "the selection of the applicable guideline begins with reference to, first, the count of conviction, and, then, the Statutory Index." *Id.* It then emphasized that "[t]he Statutory Index of the Guidelines provides the *applicable offense guidelines* for the various criminal statutes." *Id.* (emphasis added). The equivocal language in *Principe* does not cast doubt on the importance of the Guidelines and the process that district courts are instructed to use to determine sentences.[1] Robertson also cites no legal authority to support her argument that departing from the Statutory Index is permissible.

And permitting district courts to disregard the Statutory Index would also undermine the "federal sentencing scheme, which aims to achieve

---

[1] Several unpublished opinions from this court also acknowledge that "Amendment 591 emphasizes that . . . a sentencing court 'must apply the offense guideline referenced in the Statutory Index for the statute of conviction.'" *United States v. Issac*, 396 F. App'x 55, 56 (5th Cir. 2010) (per curiam); *see also United States v. Samak*, 707 F. App'x 835, 836 (5th Cir. 2018) (per curiam) ("Amendment 591 requires that a sentencing court select a Chapter Two offense guideline listed for the statute of conviction in the Statutory Index in Appendix A of the Guidelines."); *United States v. Patel*, 481 F. App'x 906, 907 (5th Cir. 2012) (per curiam) ("Amendment 591 clarified that a sentencing court should select the applicable offense conduct guideline . . . assisted by the Statutory Index in Appendix A of the Guidelines."); *United States v. Wood*, 231 F. App'x 368 (5th Cir. 2007) (per curiam) ("Amendment 591 applies to the determination of the appropriate Chapter Two offense guideline section, and Wood was properly sentenced under U.S.S.G. § 2D1.1, the appropriate offense guideline section for his conviction under 21 U.S.C. § 846.").

uniformity by ensuring that sentencing decisions are anchored by the Guidelines." *Peugh*, 569 U.S. at 531. This would result in "significant sentencing disparities among similarly situated offenders"—the specific harm that motivated Congress to create the Sentencing Reform Act. Such an "indeterminate-sentencing system" would be a "serious impediment to an evenhanded and effective operation of the criminal justice system." *Mistretta*, 488 U.S. at 366.

## III

Robertson next argues that the assault guideline fits her offense conduct, and that the obstruction guideline is inapplicable because it focuses on "active interference with government functions." She notes that this focus on obstruction is reflected in the higher base offense level, as well as in the commentary noting that it accounts for the official status of the victim. According to Robertson, "[n]othing in the record suggests Robertson interfered with mail delivery or any other governmental function."

We disagree. Robertson pleaded guilty to assaulting a federal officer under 18 U.S.C. § 111(a), which applies to whoever "forcibly assaults . . . [a federal official] *while engaged in . . . the performance of official duties*." 18 U.S.C. § 111(a)(1) (emphasis added). Sworn statements in "open court during a plea hearing 'carry a strong presumption of verity.'" *United States v. Martinez-Molina*, 64 F.3d 719, 733 (5th Cir. 1995) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). The district court did not err by determining that the obstruction guideline fit Robertson's conduct.[2]

---

[2] Robertson also argues that the district court's alleged error in applying the obstruction guideline was "far from harmless." Because we conclude that the district court properly applied the obstruction guideline, we need not address this issue.

No. 24-30633

IV

The district court's sentence is AFFIRMED.